1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    EASTERN DISTRICT OF WASHINGTON
7    MOLLIE THOLA,
8                              Plaintiff,          NO:  12-CV-0452-TOR
9        v.                                        ORDER ON DEFENDANTS'
                                                   MOTIONS FOR SUMMARY
10   CITY OF LIBERTY LAKE, et al.,                 JUDGMENT
11                              Defendants.
12
13         BEFORE THE COURT are the following motions: (1) Defendants Michelle

14   Griffin's and Douglas Smith's Motion for Summary Judgment (ECF No. 19), in

15   which Defendant City of Liberty Lake has joined (ECF No. 26); (2) Defendant

16   City of Liberty Lake's Motion for Summary Judgment (ECF No. 27); (3)

17   Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 33); (4)

18   Defendants Smith's and Griffin's Motion to Exclude Expert Witness (ECF No.

19   48); (5) Plaintiff's Motion to Continue Trial (ECF No. 56) and (6) Plaintiff's

20   Motion to Expedite (ECF No. 69).  These matters were heard with oral argument

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 1

on September 12, 2013.  Michael B. Love appeared on behalf of the Plaintiff.
Jerry J. Moberg appeared on behalf of Defendant City of Liberty Lake.  Michael E.
McFarland, Jr. appeared on behalf of Defendants Michelle Griffin and Douglas
Smith.  The Court has reviewed the briefing and the record and files herein, and is
fully informed.

BACKGROUND

This employment discrimination case arises from Plaintiff Mollie Thola's
termination from the position of head golf professional for the Trailhead Golf
Course in the City of Liberty Lake, Washington.  Plaintiff has asserted causes of
action for, *inter alia*, age and gender discrimination, hostile work environment,
retaliation, defamation, and willful failure to pay overtime wages.  Defendants
have moved for summary judgment on all claims.  For the reasons discussed
below, the Court concludes that there are no genuine issues of material fact as to
any claim.

FACTS

Plaintiff Mollie Thola ("Plaintiff") was hired by Defendant City of Liberty
Lake (the "City") as the head golf professional for Trailhead Golf Course in
August 2002.  Over the next several years, Plaintiff developed a reputation as a
friendly person and an excellent golf instructor.  By all accounts, Plaintiff became
very well-liked by her co-workers and by members of the general public.

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 2

Although she excelled in most areas of her job, Plaintiff found it difficult to manage the financial aspects of running the Trailhead golf shop.  Two areas in which Plaintiff experienced considerable difficulty were producing accurate cash accounting and maintaining accurate inventory records.  By 2003, these issues had drawn the attention of the Washington State Auditor's Office ("State Auditor").  In audit reports for the years 2006, 2007, 2008 and 2009, the State Auditor instructed the City to (1) implement tighter inventory tracking procedures; and (2) create and adhere to more rigorous cash accounting procedures.  ECF No. 24-1 at 18, 30-31, 37.  In 2010, the State Auditor informed the City that it would issue adverse "findings" if the City failed to adopt and follow better cash handling and inventory tracking procedures at the golf shop.  Smith Aff., ECF No. 23, at ¶ 13.  In an effort to remedy the situation, the City's Community Development Director, Defendant Douglas Smith, directed the City Treasurer to work with Plaintiff to ensure that her cash handling procedures complied with the State Auditor's recommendations.  Smith Aff., ECF No. 23, at ¶ 13; Gale Decl., ECF No. 24, at 6-7.

In late 2010, the City experienced a budget crisis.  Realizing that cuts were inevitable, the City polled its citizens about which non-essential services should receive reduced funding.  The results of this survey indicated that the Trailhead Golf Course and the City Library were the lowest-priority services.  With this information in mind, the City laid off all full-time employees of the golf course

(including Plaintiff), reduced the hours of operation of the library, and laid off two other City employees.  Smith Aff., ECF No. 23, at ¶ 11.

Shortly after these layoffs, several members of community complained to their elected representatives about Plaintiff's dismissal.  Smith Aff., ECF No. 23, at ¶ 12.  In response to these complaints, the City Council restructured the budget so that Plaintiff could return to work as an hourly employee beginning in January 2013.  Smith Aff., ECF No. 23, at ¶ 12.  Mindful of the accounting and inventory problems which had plagued the golf shop during Plaintiff's prior tenure, Defendant Smith re-wrote the head professional's job description to include increased financial management responsibilities.  *See* ECF No. 21-7.  Plaintiff reviewed and accepted the new job description and was officially rehired.

When Plaintiff returned to work in early January 2011, her immediate supervisor, Defendant Michelle Griffin, emphasized to Plaintiff that the golf shop's cash accounting needed to be "absolutely accurate" in order to avoid sanctions by the State Auditor.  Thola Dep., ECF No. 21-4, at Tr. 83-84.  Defendant Griffin further advised Plaintiff that "there was not a more important aspect of [her] job than assuring that all State Auditor recommendations and directives were met."  Thola Dep., ECF No. 21-4, at Tr. 104-05.  Despite these warnings, Plaintiff continued to produce inaccurate cash accounting and inventory reports.  This circumstance eventually prompted Defendant Griffin to schedule weekly

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 4

performance review meetings with Plaintiff to review the City's cash accounting and inventory tracking procedures.  Nevertheless, the inaccuracies persisted.

By June 2011, Defendant Griffin and Defendant Smith had concluded that Plaintiff was simply incapable of managing the financial aspects of running the pro shop.  They communicated their concerns to the City's mayor, who in turn offered Plaintiff an opportunity to amend her job description to focus exclusively on golf-related activities.  Believing that she was adequately fulfilling all of her existing responsibilities, and not willing to accept a pay cut, Plaintiff declined the offer.  Shortly thereafter, Plaintiff was formally terminated.  This lawsuit followed.

DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 5

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. Leave to Amend Complaint**

Plaintiff has requested leave to amend her Complaint to **withdraw** her claims for (1) invasion of privacy; and (2) negligent hiring, retention and supervision. ECF No. 30 at 2. Defendants have not objected to this request. Accordingly, Plaintiff is granted leave to amend. The Amended Complaint filed on July 26, 2013, at ECF No. 47 is accepted as filed.

**B. WLAD Discrimination Claims**

    a. <u>Age Discrimination</u>

To state a prima facie case of age discrimination in violation of the Washington Law Against Discrimination ("WLAD"), a plaintiff must demonstrate that: "(1) she was within the statutorily protected age group of employees 40 years of age or older, (2) she was discharged, (3) she was doing satisfactory work, and

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 6

(4) she was replaced by a significantly younger person." *Becker v. Wash. State Univ.*, 165 Wash. App. 235, 252 (2011) (citations omitted).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge.  *Id.*  If the defendant identifies such a reason, the burden shifts back to the plaintiff to establish that the proffered reason is a mere pretext for unlawful discrimination.  *Id.*  Pretext may be established by demonstrating: (1) that the proffered reason has no basis in fact; (2) that the employer was not actually motivated by the proffered reason; or (3) that the proffered reason is insufficient to warrant termination.  *Id.* (citation omitted).

Defendants have challenged Plaintiff's ability to establish the third element of her prima facie case: that she was performing satisfactory work at the time she was discharged.  ECF No. 19 at 7.  This challenge is well-taken.  By her own admission, Plaintiff "w[as] not . . . getting the job done that was being asked of her as a head professional" as of the date she was terminated.  Thola Dep., ECF No. 21-5, at Tr. 138.  This admission, which is supported by the record as a whole, is fatal to Plaintiff's ability to establish that she was performing satisfactory work.

Moreover, assuming *arguendo* that Plaintiff could establish a prima facie case, she cannot demonstrate that the proffered reason for her termination—her inability to manage the business aspects of running a golf shop—was a mere pretext for age discrimination.  It is undisputed that Plaintiff (1) was constantly

warned about the need to maintain accurate cash accounting and inventory records;

(2) understood that she could be reprimanded or even terminated for failing to

produce accurate cash accounting and inventory reports; and (3) was told that

"there was not a more important aspect of [her] job than assuring that all State

Auditor recommendations and directives were met" with regard to cash accounting

and inventory tracking.  Thola Dep., ECF No. 21-4, at Tr. 83, 85, 104-05; ECF No.

21-5 at Tr. 141-42, 210, 212.  It is further undisputed that, despite receiving these

repeated warnings, Plaintiff consistently submitted inaccurate cash accounting and

inventory records.  Thola Dep., ECF No. 21-5, at 135, 143.  Indeed, Plaintiff

admits that she continued to make mistakes in these areas until she was ultimately

terminated.  Thola Dep., ECF No. 21-5, at Tr. 134-35, 143.  In view of this

undisputed evidence, no rational jury could find that discriminatory animus was a

substantial factor in Plaintiff's termination.  Accordingly, Defendants are entitled

to summary judgment on this claim.

      b. <u>Gender Discrimination</u>

      To state a prima facie claim of gender discrimination a plaintiff must show

that she "(1) is a member of a protected class; (2) was discharged; (3) was doing

satisfactory work; and (4) was replaced by a person of the opposite sex or

otherwise outside the protected group." *Domingo v. Boeing Emp. Credit Union*,

124 Wash. App. 71, 81 (2004) (citation omitted).  When the plaintiff's theory of

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 8

discrimination involves disparate treatment (as opposed to a disparate impact) she

must further demonstrate that she was "treated differently from persons of the

opposite sex who are otherwise similarly situated." *Id.* (citation omitted).  Gender

discrimination claims are subject to the same burden shifting framework outlined

above. *Id.* at 77.

Defendants are entitled to summary judgment on this claim for the same

reasons identified above in conjunction with Plaintiff's age discrimination claim.

Specifically, Plaintiff cannot establish a prima facie case of gender discrimination

because she failed to demonstrate that she was performing satisfactory work at the

time she was terminated.  Furthermore, even if Plaintiff could clear this initial

hurdle, she cannot demonstrate that the stated legitimate, non-discriminatory

reasons for her termination were pretextual.  There are no genuine issues for trial

on this claim.

## C. Hostile Work Environment Claim

To establish a prima facie hostile work environment claim under the WLAD,

a plaintiff must show (1) unwelcome harassment; (2) attributable to the plaintiff's

membership in a protected class; (3) which affects the terms and conditions of

employment; and (4) which can be imputed to the employer.  *Loeffelholz v. Univ.*

*of Wash.*, 175 Wash.2d 264, 265 (2012).  With regard to the second element, the

plaintiff's membership in a protected class must be "*the* motivating factor" for the

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 9

unlawful harassment.  *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 407

(1985) (emphasis added).  In other words, the plaintiff must prove that he or she

was harassed "because of" his or her membership in a protected class.  *Id.*; *Robel v.*

*Roundup Corp.*, 148 Wash.2d 35, 46 (2002); *DeWater v. State*, 130 Wash.2d 128,

135 (1996); *Domingo*, 124 Wash. App. at 84.

     Defendants argue that Plaintiff cannot prove that she was harassed "because

of" her protected status as a female and/or a person over the age of 40.  ECF No.

19 at 9.  The Court agrees.  To whatever extent Defendants Smith and Griffin

"harassed" Plaintiff about her job performance, the harassment was wholly

unrelated to Plaintiff's age or gender.  As noted above, Plaintiff acknowledges that

she "w[as] not . . . getting the job done that was being asked of her as a head

professional."  Thola Dep., ECF No. 21-5, at Tr. 138.  The "micromanagement"

which Plaintiff allegedly suffered at the hands of Defendants Smith and Griffin

was directly related to her admittedly deficient job performance.  No rational jury

could find that Plaintiff was being harassed "because of" her age or gender.

     In her deposition testimony, Plaintiff suggests that she was harassed because

of her lack of computer skills—a circumstance which Plaintiff attributes to her

relatively advanced age.  *See* Thola Dep., ECF No. 21-5, at Tr. 245; ECF No. 54-4,

at Tr. 160-61, 164.  The record reveals that Plaintiff was, in fact, criticized for

failing to master computer programs such as Microsoft Excel and the golf shop's

point-of-sale system.  Nevertheless, this criticism cannot reasonably be construed as harassment on the basis of Plaintiff's age.  For one thing, there is no evidence that Plaintiff's age rendered her physically or mentally incapable of learning to use basic computer programs.  As a matter of common experience, many people in Plaintiff's age group are able to master basic computer skills.  More importantly, the record reveals that Plaintiff was given extensive training on how to operate the golf shop's computer systems.  Despite receiving this extensive training, however, Plaintiff simply "couldn't get it."  *See* Thola Dep., ECF No. 54-4, at Tr. 193-94 ("I just couldn't get it . . . Couldn't get the . . . computer procedures, if you will, for, getting the documents that they needed.  I just, I couldn't do it.").  The fact that Plaintiff subjectively attributes her lack of computer proficiency to her age is insufficient to create a triable issue of fact as to her hostile work environment claim.  Thus, Defendants are entitled to summary judgment.

**D. WLAD Retaliation Claim**

To state a prima face case for unlawful retaliation under the WLAD, a plaintiff must demonstrate that "(1) he or she engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal link between the employee's activity and the employer's adverse action."  *Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845, 862 (2000).  "The plaintiff need not show that retaliation was the only or 'but for' cause of the adverse employment

25

action, but [rather] that it was at least a substantial factor." *Id.* (citing *Allison v. Hous. Auth. of City of Seattle*, 118 Wash.2d 79, 96 (1991)).

If the plaintiff succeeds in stating a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 364 (2012). This is a burden of production rather than a burden of persuasion; the defendant need only "set forth *some* evidence that it acted for legitimate, nondiscriminatory reasons." *Id.* (emphasis added). If the defendant successfully articulates such a reason, the burden shifts back to the plaintiff to demonstrate that the defendant's stated reason is a mere pretext for retaliatory conduct. *Wilmot v. Kaiser Aluminum and Chem. Corp.*, 118 Wash.2d 46, 70 (1991).

In her Amended Complaint, Plaintiff alleges that Defendants Smith and Griffin retaliated against her for complaining to the Liberty Lake City Council about being subjected to discrimination and a hostile work environment. Pl.'s Am. Compl., ECF No. 47, at ¶¶ 4.2-4.3; ECF No. 30 at 15-17. According to Plaintiff, her complaints prompted the City Council to issue "what amounted to a 'no contact order'" prohibiting Defendant Smith from interacting with her. ECF No. 30 at 15; *see also* Pl.'s Am. Compl., ECF No. 47, at ¶ 2.22.[1] Plaintiff asserts that shortly

---

[1]  At oral argument, Plaintiff's counsel admitted that the City Council did not issue a formal "no contact order," but rather one or two council members privately told

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 12

after this directive was issued, Defendants Smith and Griffin retaliated against her by subjecting her work to increased scrutiny, declaring that they would no longer "support her," and ultimately recommending to the mayor that she be terminated.

Defendants contend that Plaintiff has failed to establish a prima facie case of retaliation because her complaints to members of the City Council do not amount to protected activity as a matter of law. They further maintain that Plaintiff was terminated for the legitimate, non-discriminatory reason that she was unable to manage the "business" aspects of the golf shop, and that there is no evidence to support a finding that this reason was a mere pretext for unlawful retaliation. The Court will address each of these arguments in turn.

1. Prima Facie Case – Protected Activity

The WLAD's anti-retaliation provision is set forth at RCW 49.60.210. The statute provides, in relevant part, that an employer may not retaliate against an employee "because he or she has opposed any practices forbidden by this chapter." RCW 49.60.210(1). The protection afforded by this language is not limited to complaints about employment practices which *actually* violate the WLAD; employees who oppose employment practices which they *reasonably believe*

Plaintiff that Defendant Smith shouldn't have contact with her as "he is not your supervisor."

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 13

violate the WLAD are also entitled to protection.  *Graves v. Dep't of Game*, 76

Wash. App. 705, 712 (1994); *Renz v. Spokane Eye Clinic, P.S.*, 114 Wash. App.

611, 619-20 (2002).  An employee's belief that his or her employer has violated

the WLAD must be both objectively and subjectively reasonable under the

circumstances.  *See Moyo v. Gomez*, 40 F.3d 982, 984-85 (9th Cir. 1994) (to be

entitled to protection under Title VII, employee's belief that his or her employer

acted unlawfully must be objectively reasonable and held in good faith).

In her Amended Complaint, Plaintiff alleges that she "was ultimately

terminated in retaliation for raising a reasonable good faith belief . . . that she was

being discriminated against on the basis of her gender and/or age."  Pl.'s Am.

Compl., ECF No. 47, at ¶ 2.37.  This allegation is wholly unsupported by the

existing record.  There is no evidence that Plaintiff ever complained to the City

Council about harassment or discrimination *on the basis of her age or gender*.  One

of the City Council members to whom Plaintiff complained, Susan Schuler,

testified that Plaintiff's complaints focused on her "inability to have a successful

professional relationship with her direct supervisor."  Schuler Dep., ECF No. 54-2

at Tr. 22.  By Ms. Schuler's account, Plaintiff felt that she "wasn't being successful

at her job, and that she was being reviewed on a very tight schedule, and she was

not sure how to move forward with her . . . professional relationship with her

supervisor[.]"  Schuler Dep., ECF No. 54-2, at Tr. 21; *see also* Thola Dep., ECF

No. 21-5, at Tr. 192 (Plaintiff approached members of the City Council and "asked them what [she] could do better."). Ms. Schuler did not mention Plaintiff complaining about age-based or gender-based discrimination, and there is no other evidence to even remotely support a finding that such complaints were ever made.

The relevant question, then, is whether the issues about which Plaintiff *did* complain implicate an unlawful employment practice. As illustrated above, the primary issue about which Plaintiff complained was being "micromanaged" by Defendants Smith and Griffin. There is also some indication that Plaintiff may have complained about being asked to complete assignments which, in Plaintiff's opinion, were beyond the scope of her job description (*e.g.*, drafting a business plan and creating an employee training manual).

These issues do not implicate an unlawful employment practice. The WLAD prohibits discrimination on the basis of several enumerated protected characteristics. It does not insulate employees from oversight, scrutiny and criticism of their day-to-day work performance by their superiors. Nor does it preclude employers from asking their employees to complete tasks which arguably fall beyond the scope of their job descriptions. Finally, like its federal counterpart, the WLAD does not proscribe all manner of garden-variety interpersonal conflicts between employees and their supervisors. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, (1998) (explaining that Title VII must not be

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 15

1    construed as a "general civility code").  Plainly stated, nothing about which

2    Plaintiff complained was *illegal*.  To whatever extent Plaintiff may have believed

3    otherwise, her belief was not objectively reasonable under the circumstances.  No

4    reasonable jury could find that Defendants' close scrutiny of Plaintiff's *admittedly*

5    *deficient* job performance could give rise to a reasonable belief that Defendants

6    were engaged in an unlawful employment practice.  Thus, Plaintiff has failed to

7    demonstrate that she was engaged in protected activity and therefore cannot

8    establish a prima facie case of retaliation.

9        2.  Pretext – Causation

10   Given that Plaintiff has failed to state a prima facie case of retaliation, the

11   Court need not reach the issue of pretext.  Nevertheless, even assuming *arguendo*

12   that Plaintiff could establish a prima facie case, there are no genuine issues of

13   material fact concerning the true reason for Plaintiff's termination.  Defendants

14   assert that Plaintiff was fired due to her inability to manage the "business" side of

15   the golf shop.  This assertion is supported by the record as a whole—most notably

16   by Plaintiff's own deposition testimony.

17   By her own admission, Plaintiff knew that the Washington State Auditor's

18   Office had identified serious problems with the golf shop's cash accounting and

19   inventory tracking procedures before she was laid off in 2010.  Thola Dep., ECF

20   No. 21-4, at Tr. 55-58, 63, 91-92; ECF No. 21-5 at Tr. 177.  In fact, Plaintiff

admitted to being reprimanded "two or three" times during that period for failing to maintain accurate cash accounting.  Thola Dep., ECF No. 21-4, at Tr.83.  After being rehired in early 2011, Plaintiff was repeatedly warned about the need to maintain accurate cash accounting and inventory records.  Thola Dep., ECF No. 21-4, at Tr. 83, 85, 104; ECF No. 21-5 at Tr. 142, 210.  Plaintiff understood that any further inaccuracies, particularly with respect to cash accounting, could result in the City being sanctioned by the Washington State Auditor's Office.  Thola Dep., ECF No. 21-4, at Tr. 84.  She further understood that she could be reprimanded or even terminated for failing to produce accurate cash accounting and inventory reports.  Thola Dep., ECF No. 21-5, at Tr. 141, 212.  Plaintiff even acknowledges being informed that "there was not a more important aspect of [her] job than assuring that all State Auditor recommendations and directives were met." Thola Dep., ECF No. 21-4, at Tr. 104-05.

Despite being put on notice that failing to produce accurate cash accounting and inventory records could result in termination, Plaintiff continued to make errors.  Thola Dep., ECF No. 21-5, at 139, 142.  As a result, Defendant Griffin began meeting with Plaintiff on a weekly basis to coach her on cash accounting and inventory tracking procedures.  Thola Dep., ECF No. 21-5, at Tr. 142-46.  Even after receiving this hands-on instruction, Plaintiff continued to produce inaccurate cash accounting and inventory records.  Thola Dep., ECF No. 21-5, at

135, 143.  In her own words, Plaintiff simply "couldn't get it."  *See* Thola Dep., ECF No. 54-4, at Tr. 193-94 ("I just couldn't get it . . . Couldn't get the . . . computer procedures, if you will, for, getting the documents that they needed.  I just, I couldn't do it.").

When it became clear that Plaintiff could not master the golf shop's cash accounting and inventory tracking procedures, the City offered her an opportunity to change her job description to focus exclusively on golf-related activities.  Thola Dep., ECF No. 21-5, Tr. 154-56.  Plaintiff rejected this proposal because she was unwilling to accept a corresponding reduction in pay.  Thola Dep., ECF No. 21-5, at Tr. 55-56.  Shortly thereafter, the City terminated Plaintiff's employment.

In sum, the undisputed evidence of record establishes that Plaintiff was terminated due to her inability to master the business aspects of running a golf shop.  Plaintiff acknowledges that her problems with cash accounting and inventory tracking persisted until she was eventually terminated, *see* Thola Dep., ECF No. 21-5, at Tr. 134-35, 163-64, and that, as of the date of her termination, she "w[as] not . . . getting the job done that was being asked of her as a head professional."  Thola Dep., ECF No. 21-5, at Tr. 138.  There is no evidence to support a finding that Plaintiff's admitted failure to produce accurate cash accounting and inventory records was a mere pretext for unlawful retaliation.  On this record, no reasonable jury could find that retaliatory animus was a "substantial

factor" in Defendants' decision to terminate Plaintiff's employment.  Defendants

are entitled to summary judgment on this alternative basis as well.

### E. Wrongful Discharge in Violation of Public Policy Claim

To prevail on a common law claim for wrongful discharge in violation of

public policy, a plaintiff must prove the following four elements: "(1) the existence

of a clear public policy (the *clarity* element); (2) that discouraging the conduct in

which he engaged would jeopardize the public policy (the *jeopardy* element); (3)

that the public-policy-linked conduct caused the dismissal (the *causation* element;

and, finally, (4) that the defendant has not offered an overriding justification for the

dismissal (the *absence of justification* element)."  *Cudney v. ALSCO, Inc.*, 172

Wash.2d 524, 529, 259 P.3d 244 (2011) (emphasis in original) (internal quotations,

citations and modifications omitted).

Defendants argue that Plaintiff is unable to prove the causation element of

her claim.  *See* ECF No. 19 at 13-14 (arguing that Plaintiff is "unable to establish

that she engaged in some conduct that furthered a clear public policy and that her

termination was caused by that conduct").  For the reasons discussed above in

conjunction with Plaintiff's retaliation claim, the Court agrees.  To whatever extent

Plaintiff's complaints to members of the City Council may have implicated a clear

public policy, this conduct was not causally related to her termination.  Plaintiff

was terminated because she was unable manage the business aspects of running the

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 19

golf shop.  No reasonable jury could find otherwise on the facts of this case.  Thus,

Defendants are entitled to summary judgment on this claim.

## F.  Breach of Promise of Specific Treatment in Specific Circumstances Claim (Handbook Claim)

Washington follows the at-will employment doctrine, which provides that an

employer may discharge an employee "for no cause, good cause or even cause

morally wrong without fear of liability."  *Thompson v. St. Regis Paper Co.*, 102

Wash.2d 219, 226 (1984).  One exception to this doctrine arises from express

promises made to employees in handbooks or policy manuals.  *See id.* at 228.

When an employer's written materials contain a promise of specific treatment in

specific situations, employees may rely upon that promise under the equitable

theory of justifiable reliance.  *Quedado v. Boeing Co.*, 168 Wash. App. 363, 369,

(2012); *see also Thompson*, 102 Wash.2d at 230 ("[I]f an employer, for whatever

reason, creates an atmosphere of job security and fair treatment with promises of

specific treatment in specific situations and an employee is induced thereby to

remain on the job and not actively seek other employment, those promises are

enforceable components of the employment relationship.") (emphasis omitted).  If

the employee justifiably relies upon the promise, and the employer subsequently

breaches it, the employee has a common law claim for breach of promise of

specific treatment in specific circumstances (commonly referred to as a "handbook claim").

To prevail on a handbook claim, an employee must prove: "(1) that a statement (or statements) in an employee manual or handbook or similar document amounts to a promise of specific treatment in specific situations, (2) that the employee justifiably relied on the promise, and (3) that the promise was breached. *Quedado*, 168 Wash. App. at 368-69 (quotation and citation omitted).  Although these elements typically present questions of fact, a court may grant summary judgment when reasonable minds could reach only one conclusion.  *See Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 104-05 (1994).

Plaintiff alleges that Defendants breached a promise that she would not be retaliated against for reporting employer misconduct while employed by the City of Liberty Lake.  *See* ECF No. 30 at 21 ("The City breached the enforceable promise made of no retaliatory action as outlined in the employee handbook which [Plaintiff] justifiably relied upon during her employment.").  This claim fails for the reasons addressed above in conjunction with Plaintiff's retaliation claim.  As a matter of undisputed fact, Plaintiff was not subject to unlawful retaliation as a result of her complaints to the members of the City Council.

Moreover, as Defendants correctly note, general statements of an employer's policies are insufficient to modify the employment-at-will relationship.  *See*

1   *Quedado*, 168 Wash. App. at 369 ("If the written terms amount only to general

2   statements of company policy, then the document does not create an implied

3   contract modifying the at-will relationship, nor does it support an equitable claim

4   of reliance on a specific promise.").  The portions of the City of Liberty Lake

5   Personnel Manual upon which Plaintiff relies are merely general statements of

6   policy.  *See* ECF No. 34-13 at 35-36.  As such, these statements are insufficiently

7   detailed to support a claim for breach of promise of specific treatment in specific

8   circumstances.  Defendants are entitled to summary judgment on this claim.

9   **G. Defamation Claim**

10      To prevail on a common law defamation claim, a plaintiff must prove "(1)

11  falsity; (2) an unprivileged communication; (3) fault; and (4) damages."  *Bender v.*

12  *City of Seattle*, 99 Wash.2d 582, 599 (1983).  When the plaintiff is a public figure,

13  he or she must prove that the false statement was communicated with actual

14  malice—*i.e.*, with actual knowledge of its falsity or with reckless disregard to its

15  truth.  *Id.*  When the plaintiff is a private individual, by contrast, he or she need

16  only prove that the defendant acted negligently.  *Id.*

17      In support of her defamation claim, Plaintiff alleges that Defendants accused

18  her of "'embezzling' and/or 'stealing' from the City of Liberty Lake by improperly

19  scheduling, giving, and taking money for golf lessons for her own personal

20  benefit[.]"  Pl.'s Am. Compl., ECF No. 47, at ¶ 6.3.  In response, Defendants have

asserted the so-called common interest privilege.  ECF No. 19 at 16-17; ECF No.

52 at 17-18.  The common interest privilege precludes liability for otherwise

defamatory statements when "the declarant and the recipient have a common

interest in the subject matter of the communication."  *Valdez-Zontek v. Eastmont*

*Sch. Dist.*, 154 Wash. App. 147, 162 (internal quotation and citation omitted).  The

privilege "generally applies to organizations, partnerships, and associations and

arises when parties need to speak freely and openly about subjects of common

organizational or pecuniary interest."  *Id.* (internal quotation and citation omitted).

The defendant bears the burden of proving that the privilege applies.  *Id.*

Like other qualified privileges, the common interest privilege may be lost as

a result of abuse.  Abuse of the privilege occurs when the defendant:

> (1) knows the matter to be false or acts in reckless disregard as to its
> truth or falsity of the statement; (2) does not act for the purpose of
> protecting the interest that is the reason for the existence of the
> privilege; (3) knowingly publishes the matter to a person to whom its
> publication is not otherwise privileged; (4) does not reasonably
> believe the matter to be necessary to accomplish the purpose for
> which the privilege is given; or (5) publishes unprivileged as well as
> privileged matter.

*Moe v. Wise*, 97 Wash. App. 950, 963 (1999) (internal citations omitted).  The

plaintiff bears the burden of proving abuse by clear and convincing evidence.  *Id.*

The Court finds that the common interest privilege applies.  As a threshold

matter, there is no evidence that allegations of "embezzlement" or "stealing" were

ever communicated to members of the general public.  Assuming for the sake of

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 23

argument that Defendants Smith and Griffin actually accused Plaintiff of stealing (as opposed to simply asking her whether she had accepted direct payment for golf lessons), the accusations were communicated only to Plaintiff and to Defendant Smith's and Defendant Griffin's superiors. This was clearly a topic that members of the City's administration had a common interest in discussing.

Moreover, there is no evidence to support a finding that Defendant Smith or Defendant Griffin abused the privilege. Upon learning that Plaintiff may have accepted direct payment for golf lessons, Defendants Smith and Griffin simply asked Plaintiff to sign a statement confirming or denying that she had done so. ECF No. 21-8. When Plaintiff indicated that she had not received any direct payments, the matter was dropped. No rational jury could find by clear and convincing evidence that Defendants abused the privilege. Accordingly, Defendants are entitled to summary judgment on this claim.

**H. Wage and Hour Claims (Unpaid Overtime)**

Plaintiff has asserted claims to recover wages for unpaid overtime work under the Fair Labor Standards Act ("FLSA") and the Washington Minimum Wage Act ("MWA"). Defendants seek summary dismissal of these claims on the grounds that Plaintiff (1) was expressly instructed not to work more than forty hours per week; and (2) never reported any of the overtime hours she allegedly worked. ECF No. 19 at 20; ECF No. 52 at 18-19. In support of their position,

Defendants cite to *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), for the proposition that an employee who effectively conceals overtime hours has no cause of action for violations of federal wage and hour laws.

Having reviewed the record, the Court finds no genuine issues of material fact as to these claims. It is undisputed that Plaintiff was instructed not to work more than forty hours per week upon being rehired in January 2011. ECF No. 31 at ¶ 34. Because she subjectively believed that "what was being expected of [her] required more than a forty hour work week," however, she occasionally worked overtime without permission. *See* ECF No. 31 at ¶ 37. There is no evidence that Plaintiff ever reported or otherwise sought payment for these overtime hours. Similarly, there is nothing to suggest that Defendants knew that Plaintiff was working unauthorized overtime hours and simply looked the other way. *See Forrester*, 646 F.2d at 414 ("[A]n employer who knows or should have known that an employee is or was working overtime must comply with the provisions of [the FLSA]. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."). To the contrary, the record reflects that Plaintiff was disciplined for working unauthorized overtime hours on those few occasions when she was actually caught. ECF No. 31 at ¶ 39. Accordingly, Defendants are entitled to summary judgment on these

claims. *See id.* ("[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA].").

## I.  Defendants' Motion to Exclude Expert Witness

Defendants Smith and Griffin have moved to exclude the trial testimony of Plaintiff's economic expert, Andrew McDirmid, on the ground that the expert was not timely disclosed.  ECF No. 48.  In response to this motion, Plaintiff has moved to continue the October 21, 2013 trial setting in order to afford Defendants additional time to depose Mr. McDirmid.  ECF Nos. 56, 69.  In light of the Court's rulings above, these motions are denied as moot.

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 33) is **GRANTED**.

2.  Defendants' Motions for Summary Judgment (ECF Nos. 19 and 27) are **GRANTED**.

3.  Defendants Smith's and Griffin's Motion to Exclude Expert Witness (ECF No. 48) is **DENIED as moot**.

1      4.  Plaintiff's Motion to Continue Trial (ECF No. 56) and Motion to

2          Expedite (ECF No. 69) are **DENIED as moot**.

3          The District Court Executive is hereby directed to enter this Order, provide

4    copies to counsel, enter **JUDGMENT** in favor of all Defendants, and **CLOSE** the

5    file.

6          **DATED** September 13, 2013.



8                                    THOMAS O. RICE
                             United States District Judge

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 27